# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT SMITH, | Case No. 1:25-cv-00390-EPG-HC |
| Petitioner, | ORDER DENYING PETITIONER'S FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| WARDEN, FCI MENDOTA, | (ECF No. 6). |
| Respondent. | |

Petitioner Robert Smith is a federal prisoner proceeding *pro se* with an amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 6). For the reasons explained below, the Court will deny the amended petition.

**I.**

**BACKGROUND**

Petitioner is currently in the custody of the Federal Bureau of Prisons (BOP) at the Federal Correction Institution, Mendota in Mendota, California (FCI Mendota). (ECF No. 6, p. 2). While at FCI Mendota, Petitioner was charged with possessing a hazardous tool in violation of Disciplinary Code 108. (*Id.* at 20).

The underlying incident report describes the basis for this charge as follows:

On November 5, 2023, at approximately 6:25 AM, I conducted a cell search of A2 cell 202 assigned to inmates Bracken, John Reg. No. 23995-039 and Smith, Robert Reg. No. 797921- 112. During the search I found Silver in color AT&T android smart phone with Sim card. The smart phone found hidden under the

1

lower bunk of cell 202, attached with a magnet to the bottom side of the frame near the latter. Inmates Bracken and Smith were identified using SENTRY and TRUSCOPE to be the inmates assigned to A2 cell 202. The Operations Lieutenant was notified.

(ECF No. 16-1, p. 26).

A lieutenant investigated the charge and found that Petitioner was properly charged and forwarded the report and investigation to the Unit Disciplinary Committee (UDC) for further disposition. (*Id.* at 28). And the UDC referred the charge to the disciplinary hearing officer (DHO) for further hearing. (*Id.* at 27).

On November 21, 2023, the DHO conducted a hearing and found that the act was committed as charged. (*Id.* at 23). Petitioner was assessed a sanction of 41 days of disallowed good conduct time and loss of other privileges, *e.g.*, phone privileges. (*Id.* at 24). Petitioner exhausted his administrative remedies. (ECF No. 6, p. 3).

On April 4, 2025, Petitioner filed his initial petition for writ of habeas corpus, challenging his disciplinary proceeding. (ECF No. 1). The Court screened the initial petition on May 15, 2025, noting that Petitioner appeared to allege due process violations based on (1) a delay in receiving the DHO report in violation of a BOP program statement and (2) fraud and false reports. (ECF No. 4, pp. 2-3). The Court concluded that Petitioner failed to state a cognizable habeas claim but granted him leave to file an amended petition. (*Id.* at 3).

Petitioner filed a first amended petition on June 17, 2025, and the Court issued a briefing schedule. (ECF Nos. 6, 7). Ultimately, the Court stayed briefing due to the lapse of funding affecting the Department of Justice. (ECF No. 15).

On December 15, 2025, Respondent filed a response to the petition.[1] (ECF No. 16). Petitioner failed to timely file a traverse.

Because the parties have consented to proceed before the undersigned for all further proceedings, the Court issues this order on the petition. (ECF No. 11).

---

[1] Although Respondent's filing is tilted an "opposition and motion to dismiss," Respondent does not raise any grounds for dismissal, addresses the merits of the petition, and concludes that "this Court should deny Smith's First Amended Petition." (ECF No. 16, pp. 1, 11) (capitalization omitted).

**II.**

**PARTIES' ARGUMENTS[2]**

Petitioner argues that he was denied due process because he "had a DHO hearing on 11/21/2023" and thereafter "did not receive a DHO report." (ECF No. 6, p. 13). He contends that this prejudiced him because he could not "file on all possible claims but instead just one of not receiving the DHO report." (*Id.* at 12).

While Petitioner seems to suggest that he never received the DHO report at all (*e.g.*, stating "it has not been afforded to [him]"), he must have received the DHO report at some point because he attaches it to his amended petition. (*Id.* at 20). Notably, Petitioner elsewhere indicates that he believes his due process rights were violated because he was not given the DHO report within the 15-day period ordinarily provided under a program statement (*i.e.*, Program Statement 5270.09). (*Id.* at 10). He attaches correspondence with prison officials to his petition, which shows that, at the latest, he received the DHO report by June 25, 2024. Specifically, a message dated March 20, 2025, states as follows: "ms appleton me and you w[]ere present when j garcia told you in my presence that he never served me that dho report 3849619 and your my unit manager *that made ogle serve it to me on 6-25-24* with a date of 1-30-24 on it so if you have no part in it who do i go to[?]" (*Id.* at 18) (emphasis added).

Lastly, the Court notes that Petitioner filed his petition on a standard form listing two grounds in the section, "Grounds for this 28 U.S.C. § 2241 Petition": (1) the DHO ignored the facts and denied his request for a staff representative at the hearing, which denied him the opportunity to prepare for the hearing or view evidence; and (2) the DHO stated it was his job to find Petitioner guilty and ignored the evidence, thus denying Petitioner the right to a fair hearing. (ECF No. 6, pp. 2–3) (capitalization omitted). Arguably, Petitioner has waived review of these issues by failing to argue them in the body of his petition. *See S.L. v. Upland Unified Sch. Dist.*, No. EDCV 182122 JGB (KKx), 2020 WL 2510646, at *5 (C.D. Cal. Mar. 5, 2020) (concluding that inadequately developed claims were waived). However, the Court briefly

---

[2] For readability, the Court has made minor alterations, such as changing capitalization, to some of Petitioner's quotations without specifying each change.

considers these issues below.

Respondent argues that the face of the DHO report shows that Petitioner received it on January 30, 2024, and although this is beyond the 15-day period ordinarily provided under the program statement, failure to comply with the program statement cannot itself establish a due process violation. (ECF No. 16, pp. 6, 9). Further, Respondent argues that Petitioner's disciplinary appeal documents show that he received the DHO report again in early February 2024 after he complained about not receiving it. (*Id.* at 9). And even if Petitioner did not receive the report until June 2024, Respondent argues that Petitioner cannot show that he was denied due process because prison officials reviewed all the issues he raised in his disciplinary appeal proceedings as evidenced by Petitioner's appeal documents. (*Id.* at 10). Lastly, Respondent contends that there was some evidence to support Petitioner's conviction for his disciplinary charge. (*Id.* at 10-11).

Respondent's opposition attaches the declaration of DHO Gonzalez, documents relating to Petitioner's underlying judgment and sentence, disciplinary proceeding documents, and appeal documents.

**III.**

**DISCUSSION**

Prisoners cannot be entirely deprived of their constitutional rights, but their rights may be diminished by the needs and objectives of the institutional environment. *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974). Prison disciplinary proceedings are not part of a criminal prosecution, so a prisoner is not afforded the full panoply of rights in such proceedings. *Id.* at 556.

When a prison disciplinary proceeding may result in the loss of good time credits, due process requires that the prisoner receive: (1) advance written notice of the charges at least twenty-four hours before a disciplinary hearing; (2) an opportunity—when consistent with institutional safety and correctional goals—to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied upon and the reasons for the disciplinary action. *Id. at* 563–67; *Superintendent v. Hill*, 472 U.S. 445, 454

(1984). Inmates are also entitled to an impartial decisionmaker in a disciplinary proceeding. *Wolff*, 418 U.S. at 570–71.

Additionally, due process requires that there be "some evidence" to support the disciplinary decision to revoke good time credits. *Hill*, 472 U.S. at 454–55. "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion . . . ." *Id.* at 455–56.

With these standards in mind, the Court concludes that Petitioner is not entitled to habeas relief.

The Court will assume, *arguendo*, that Petitioner first received the DHO report in June 2024 as the message attached to his amended petition indicates. (ECF No. 6, p. 18). First, to the extent that Petitioner argues (ECF No. 6, p. 10) that his due process rights were violated because he did not receive the DHO report within the 15-day period ordinarily provided under a program statement, "[a] habeas claim cannot be sustained based solely upon the BOP's purported violation of its own program statement because noncompliance with a BOP program statement is not a violation of federal law." *Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011). And as to the particular program statement (5279.09), it "does not require the DHO to provide a report within 15 business days, but simply states it will ordinarily be provided within 15 work days. Moreover, this program statement is simply a guideline and does not confer rights." *Watson v. Milusnic*, No. 2:19-CV-07332-JGB (SP), 2023 WL 7169572, at *4 (C.D. Cal. Sept. 13, 2023), *report and recommendation adopted*, 2023 WL 7171423 (C.D. Cal. Oct. 30, 2023).

Petitioner's next argument—that his delayed receipt of the DHO report denied him due process because he could not "file on all possible claims but instead just one of not receiving the DHO report"—also fails. (ECF No. 6, p. 12). Importantly, Petitioner fails to identify any claim that he was unable to raise because he did not receive the DHO report until June 2024.

Moreover, as Respondent points out, Petitioner was able to appeal issues beyond the late receipt of the DHO report, which were considered and rejected. (ECF No. 16, p. 10). Rather, Petitioner filed two initial appeals after his disciplinary hearing. (*Id.* at 6-7, 39-40, 57-58). Most pertinent here is his second appeal (1196334-R1), received at the Western Regional Office on April 15, 2024. (*Id.* at 58). In this appeal, Petitioner asked that his charge be expunged because he did not receive his DHO report. (*Id.*). Additionally, he argued that he was improperly found guilty because he did not sleep on the bunk where the phone was found. (*Id.*).

The response to this appeal noted that "[t]he record indicate[d] a copy of the DHO Report was issued to [Petitioner] on January 30, 2024." (*Id.* at 57). Further, the response concluded that Petitioner otherwise received a fair hearing and rejected his claim that he was innocent of the possession-of-a-hazardous-tool charge:

> A review of the disciplinary action indicated that you were provided due process as required by Program Statement 5270.09, Inmate Discipline Program. You were given advanced written notice of the charge against you more than 24 hours prior to your appearance before the DHO. You were afforded the opportunity to have staff representation and to call witnesses. You waived both of these rights. You were afforded the opportunity to make a statement to the DHO and present documentary evidence on your behalf. Your statement is reflected and addressed in the DHO Report and there is no indication that you provided any documentary evidence to be considered.
>
> The DHO report clearly indicates the basis for the finding you committed the prohibited act and explains the purpose of imposing the sanctions, which are within policy.
>
> In essence, you claim you are innocent, and were not in possession of the contraband that was found. Bureau of Prisons policy directs the DHO to consider all evidence presented at the hearing and to make a decision based on some facts, and if there is conflicting evidence, to base the decision on the greater weight of the evidence. It is apparent the DHO found you guilty based on the greater weight of evidence. Evidence weighed against you included the account of the reporting officer who discovered and reported the incident, evidence photograph, and other evidence contained within the discipline packet. Such evidence supports that on the said date, time and location, staff conducted a search of your living area found a silver AT & T android smart phone with a SIM card located under the lower bunk attached with a magnet to the bottom side of the frame near the ladder. This evidence, coupled with your inability to present credible and verifiable exculpatory evidence which exonerates you from the charge and your admission during the DHO hearings, reasonably led the DHO to a guilty finding.

> Insofar as you claim you did not know anything about the cell phone found in the lower bunk frame, each inmate is responsible for ensuring his living area and property are clear of all contraband. The record indicates staff discovered the cell phone in a common area within your assigned cell. Although you claim you were not in possession of the contraband at the time of the incident, you failed to present credible and verifiable evidence which would exonerate you from the charge.

(*Id.*).

Petitioner appealed this decision to the Central Office, which considered these same arguments, but ultimately rejected them. (*Id.* at 64, 65).

In short, Petitioner's assertion that he was unable to raise arguments on appeal based on the late receipt of the DHO report is contradicted by the record and thus he cannot demonstrate any prejudice to support his due process claim. *See Williams v. Warden, USP-Mendota*, No. 1:25-CV-00546-SKO (HC), 2025 WL 2989824, at *3 (E.D. Cal. Sept. 9, 2025) (denying due process claim where petitioner claimed that he was not given a DHO report because, "[e]ven accepting Petitioner's claims to be true, he has not shown any prejudice" because his "administrative appeals were not impacted in any way" as "[h]is claims were considered at every level of appeal and rejected on the merits") (internal citation to record omitted).

The Court now briefly turns to the two issues that Petitioner presented in the "Grounds for this 28 U.S.C. § 2241 Petition" section of the form but did not otherwise argue in the body of his petition. (ECF No. 6, p. 2) (capitalization omitted). Generally, Petitioner argues that (1) he was denied a staff representative at the hearing, "which disallowed [him] to prepare for the hearing or [to] view[] evidence"; and (2) the DHO "ignored the facts" and found him guilty. (*Id.* at 3).

First, Petitioner's assertion that he was denied a staff representative is unsupported by any evidence. Rather, the DHO report (ECF No. 16-1, p. 22) and Petitioner's second appeal (*id.* at 57) both document that Petitioner waived any opportunity to have a staff representative. Regardless, an inmate is entitled to assistance during disciplinary proceedings only "[w]here an illiterate inmate is involved [or if] the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the

case." *Wolff v. McDonnell*, 418 U.S. at 570. Petitioner fails to allege that these circumstances existed in his disciplinary proceedings, nor do they appear to be present.

Second, Petitioner's assertion that the DHO "ignored the facts" in finding him guilty likewise fails. Notably, the Court is not tasked with weighing evidence or assessing credibility of witnesses in order to determine whether the requirements of due process are satisfied; "[i]nstead, the relevant question is whether there is any evidence in the record that could support the conclusion . . . ." *Hill*, 472 U.S. at 455–56. Additionally, "[t]he Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." *Id.* at 457.

Here, among other things, the DHO relied on (1) the report of the incident that detailed the investigation, including the discovery of a cell phone under Petitioner's bunk; (2) photo evidence of the cell phone; and (3) the Sentry report showing that Petitioner was assigned the bunk where the cell phone was discovered. (ECF No. 6, p. 22). Therefore, the Court finds that there is "some evidence" to support the decision to disallow good conduct time credit.

### IV.

### ORDER

Accordingly, IT IS ORDERED as follows:

1.  Petitioner's amended § 2241 petition is denied. (ECF No. 6).

2.  The Clerk of Court is directed to enter a judgment consistent with this order and to close the case.

IT IS SO ORDERED.

Dated: __**April 23, 2026**__          /s/ *Erica P. Grosjean*
                                        UNITED STATES MAGISTRATE JUDGE